UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

_____
                                    :
UNITED STATES OF AMERICA            :
                                    :    Crim. No. 10-051-1 (NLH)
     v.                             :
                                    :
ANTHONY BERRY                       :    **OPINION**
               Defendant            :
_____:

**APPEARANCES:**

FEDERAL PUBLIC DEFENDER'S OFFICE
By: Adam K. Axel, Assistant Federal Public Defender
1002 Broad Street
Newark, New Jersey 07102

     On behalf of Defendant Anthony Berry

OFFICE OF THE UNITED STATES ATTORNEY
By: Sara A. Aliabadi, Assistant United States Attorney
401 Market Street, 4th Floor
Camden, New Jersey 08101

     On behalf of the United States of America


**HILLMAN, United States District Judge**

     This matter comes before this Court upon Defendant Anthony Berry's Supplemental Motion for Reduction of Sentence [Dkt. No. 30] and prior *pro se* Motion for Reduction of Sentence [Dkt. No. 28], both pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant is an inmate currently serving concurrent sentences from the District of New Jersey and the

Eastern District of Pennsylvania at Federal Correctional Institution ("FCI") Schuylkill, a medium-security federal prison in Minersville, Pennsylvania.

In the instant motion, Defendant seeks immediate release to home confinement on the basis of two medical conditions, Type 2 diabetes and elevated cholesterol, both of which he contends put him at a heightened risk for complications if he contracts COVID-19.  The Government opposes Defendant's motion, arguing that Defendant has demonstrated neither extraordinary circumstances warranting his release, nor that he merits release under the factors set forth in 18 U.S.C. § 3553(a).  The Government also asserts that the Federal Bureau of Prisons ("BOP") has taken significant steps to protect the health of inmates in its custody, including those housed at FCI Schuylkill.

For the reasons stated below, Defendant's motion will be denied.

I.   FACTUAL AND PROCEDURAL BACKGROUND

On January 28, 2010, Defendant pleaded guilty to a two count Information, on charges – namely, conspiracy to commit robbery, and use of a firearm during and in relation to a crime of violence - stemming from his role in the April 2008 armed robbery of a Sports Authority distribution facility in Burlington Township, New Jersey.

2

On October 5, 2010, the late Judge Joseph E. Irenas sentenced Defendant to 225 months' total imprisonment, 50 months of which were to be served concurrently with a 135-month sentence previously imposed in the Eastern District of Pennsylvania for other crimes, including a March 2009 armed robbery of a business during which a victim was shot.

Defendant first submitted a request for compassionate release to Warden Scott Finley of FCI Schuylkill on April 20, 2020. Warden Finley issued a denial of that request on May 8, 2020. On May 29, 2020, Defendant filed a *pro* se motion, and on June 23, 2020, filed a supplemental motion through counsel, seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Defendant alleges that he suffers from Type 2 diabetes and elevated cholesterol, both of which make him particularly vulnerable to becoming seriously ill from COVID-19, and that he is more likely to contract COVID-19 while incarcerated at FCI Schuylkill.[1]

## II. LEGAL STANDARD

"The recently enacted First Step Act allows a defendant to be afforded compassionate release for 'extraordinary and compelling reasons.'" United States v. Sellers, Crim. No. 10-

---

[1] Defendant also alleges he has only one kidney, but does not otherwise explain how that elevates his risk of infection with or complications from COVID-19.

3

434, 2020 WL 1972862, at *1 (D.N.J. April 24, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ('BOP') to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. April 2, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).  "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(c)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

4

**III. DISCUSSION**

As the nation continues to grapple with the COVID-19 pandemic, the Court considers Defendant's Motion and its underlying concerns with seriousness. However, as the United States Court of Appeals for the Third Circuit has articulated, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant alleges, and the Government does not dispute, that Defendant has satisfied the exhaustion requirement by submitting a request for compassionate release to the FCI Schuylkill administration and receiving a denial of that request. Therefore, the Court focuses on the second step of the analysis: whether extraordinary and compelling reasons exist to justify compassionate release.

Defendant contends that "extraordinary and compelling reasons" exist to justify compassionate release based on Defendant's diagnosis of diabetes, which allegedly makes him "particularly vulnerable to severe illness from COVID-19."

First, Defendant argues that his diabetes puts him in a "high risk" group under guidance disseminated by the Centers for

5

Disease Control and Prevention (the "CDC").  In response to the COVID-19 pandemic, the CDC published guidance on its website, advising Americans that "older adults [65 years and older] and people of any age who have serious underlying medical conditions might be at higher risk for serious illness from COVID-19."[2]  The CDC states that "Type 2 diabetes mellitus" is an underlying medical condition that puts individuals at heightened risk for severe illness if they contract COVID-19.

The Government acknowledges the CDC's classification of Type 2 diabetes, but argues Defendant's medical records indicate that his condition is well-controlled and that he has yet to experience any diabetes-related complications during his term of incarceration.

Defendant also argues that his high cholesterol levels similarly put him at risk for severe illness.  The Government responds by noting that the CDC has not recognized elevated cholesterol as a "high risk" condition, and that moreover his condition is also well-controlled with medication he receives in prison.

---

[2] Centers for Disease Control and Prevention, People Who Are at Increased Risk for Severe Illness, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (accessed on July 12, 2020).

Although the Court is sympathetic to Defendant's concerns about becoming seriously ill were he to contract COVID-19, his medical history does not seem to suggest that his diabetes creates an "extraordinary and compelling" risk, or that it is not capable of being controlled by careful attention to the medication and behavioral prescriptions of Defendant's physicians.

Next, Defendant argues that prison conditions at FCI Schuylkill, and in BOP custody generally, put Defendant at heightened risk of contracting COVID-19. Defendant asserts that as of June 17, 2020, only eleven inmates at FCI Schuylkill had been tested for the coronavirus, and that therefore "[t]he true figures [of infected] are likely astronomically higher". Defendant does not otherwise allege specific shortcomings at FCI Schuylkill, but cites a March 2020 CDC "interim guidance" publication for the proposition that "there is an extraordinarily high risk of accelerated transmission of COVID-19 within prisons".

The Government argues that BOP has undertaken a number of interventions, in accordance with its Coronavirus (COVID-19) Action Plan (the "Action Plan"), to minimize risk of virus transmission into and within BOP facilities. These steps include imposing restrictions on visitation, transfers, and non-essential activities; increasing medical screening of inmates

and staff; and implementing changes in facility maintenance and sanitation.  These steps appear to have had some effectiveness.  According to the BOP website, as of the date of this Opinion FCI Schuylkill has only one confirmed active case.[3]

The Court is mindful that the general conditions of incarceration – confinement in relatively small enclosed spaces, use of common bathrooms, rationed access to hygienic products and healthcare – make prisons potential "hot spots" for virus transmission.  However, given the markedly restrained progression of the virus within FCI Schuylkill, as compared to within the Delaware Valley region generally, BOP's Action Plan appears to be having a positive impact.

Under the circumstances, granting Defendant's request to be released to reside with his wife in Philadelphia, Pennsylvania could place him at greater risk of contracting COVID-19 than the risk he currently faces.  As of July 11, 2020, Philadelphia had 28,024 confirmed cases and 1,664 deaths and a stated risk of community transmission of "high."[4]

---

[3] See https://www.bop.gov/coronavirus/ (last visited July 16, 2020).
[4] City of Philadelphia, Coronavirus Disease 2019, "Current Situation and Risk in Philadelphia", available at https://www.phila.gov/programs/coronavirus-disease-2019-covid-19/ (accessed on July 16, 2020).

8

The Court is sympathetic to Defendant's concerns for his health while in custody. Nevertheless, Defendant has failed to demonstrate that such concerns provide "extraordinary and compelling" reasons justifying his compassionate release.

In the alternative, if the Court were to decide that Defendant had demonstrated "extraordinary and compelling" reasons for release, it would also have to weigh the sentencing factors set forth in 18 U.S.C. § 3553(a), such as the nature and circumstances of the crime, Defendant's background and characteristics, and the need for specific and general deterrence. See Pabon, 2020 WL 2112265, at *2.

In this case, several factors weigh heavily against release. Defendant's crime of conviction was an armed robbery, a serious offense. Defendant's background includes the commission of multiple armed robberies, including one in which an victim was shot during the course of the robbery. These are serious crimes that should give any court pause in considering early release.

Additionally, Defendant has yet to begin serving the portion of his sentence separate from that for his crimes committed in the Eastern District of Pennsylvania. Release now would mean that he effectively served no prison time for the crime he committed in the District of New Jersey. This would be inconsistent with notions of both specific and general

9

deterrence.  The Court thus finds in the alternative that the sentencing factors in 18 U.S.C. § 3553(a) weigh against Defendant's release.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Supplemental Motion for Reduction of Sentence [Dkt. No. 30] and prior *pro se* Motion for Reduction of Sentence [Dkt. No. 28], both pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), will be denied.

An Order consistent with this Opinion shall issue on this date.

DATED: July 17, 2020

At Camden, New Jersey

_s/ Noel L. Hillman_____
NOEL L. HILLMAN, U.S.D.J.

10