**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|   |   |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 10-00051(KMW) |
| v. | |
| ANTHONY BERRY | **Opinion** |
| *Defendant.* | |

**APPEARANCES**:

ALISON BRILL
FEDERAL PUBLIC DEFENDER - DNJ
800 COOPER STREET
SUITE 350
CAMDEN, NJ 08102

     *Attorney for Defendant*

OFFICE OF THE UNITED STATES ATTORNEY
LINDSEY REBECCA HARTEIS, ASSISTANT U.S. ATTORNEY
401 MARKET STREET, 4TH FLOOR
CAMDEN, NEW JERSEY 08101

     *On behalf of the United States of America*

**WILLIAMS**, **District Judge**

     This matter comes before the Court on Defendant Anthony Berry's Supplemental Motion for Sentence Reduction (ECF No. 56), in which he claims that since the enhancement imposed as part of a federal sentence in Pennsylvania by reason of 18 U.S.C. § 924(c) was vacated pursuant to *U.S. v. Taylor*, 142 S. Ct. 2015 (2022), he is serving an unusually long sentence and is entitled to release.  (ECF No. 56 at 4.)  Defendant also seeks relief on the bases of his age (60) and medical conditions; namely, Type 2 diabetes and osteoarthritis in his back, as well as having only one functioning kidney.  (ECF No. 56 at 5.)  Finally, Defendant contends he is rehabilitated, as he has:

obtained his GED; learned the trades of plumbing and welding; successfully completed various prison programs; and, maintained employment throughout his entire sentence. (ECF No. 56 at 6, 19; 56-1 at 29–47.) The Government opposes Defendant's motion, arguing the recently enacted amendments to the Sentencing Guideline Policy Statements upon which Defendant relies were promulgated without proper authority and that notwithstanding, Defendant cannot demonstrate an extraordinary or compelling reason for the Court to grant relief. (ECF No. 61.) On July 24, 2024, the Court held oral argument and heard additional argumentation from both parties. (ECF No. 65.) Further, the Court reviewed and considered the parties' supplements to the record as it relates to the Government's Motion to Stay filed on August 1, 2024. (ECF Nos. 66-68.)

For the reasons stated below, Defendant's motion will be granted and the Government's Motion to Stay the matter will be denied.

## BACKGROUND

On January 28, 2010, Defendant Anthony Berry pleaded guilty to a two-count Information charging Conspiracy to Commit Hobbs Act Robbery, 18 U.S.C. § 1551(b)(3) and Use of a Firearm During and in Relation to a Crime of Violence, 18 U.S.C. § 924(c). These charges stemmed from Defendant's role in the April 2008 armed robbery of a Sports Authority distribution facility in Burlington Township, New Jersey. On October 5, 2010, Defendant was sentenced by the late Honorable Joseph E. Irenas to 225 months' total imprisonment. On Count 1, Defendant received 100 months—half of which was to be served concurrently with a 135-month sentence previously imposed in the Eastern District of Pennsylvania for armed robbery offenses occurring in March 2009, in which a victim was shot.[1] On Count 2, Defendant received a consecutive 125-month sentence. (ECF No. 17.)

---

[1] ████████████████████████████████████████████████████
████████████████████████████████████████████

In addition to his unsuccessful habeas litigation, Defendant previously sought compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A) on two separate occasions and was denied relief on both.[2] (ECF Nos. 35 & 40.) Defendant then filed the current motion (pro se) but because it was pending at the time Amendments to the Policy Statement regarding § 3582 motions went into effect, the court ordered supplemental briefing by both sides. (ECF No. 50.)[3] Shortly thereafter, Assistant Federal Defender Alison Brill entered her appearance on behalf of Defendant (ECF No. 52) and filed a Supplemental Motion for Reduction of Sentence Under First Step Act 18 U.S.C. § 3582 (c)(1)(A) (ECF No. 56). The Government responded (ECF No. 61) and Defendant has filed a Reply (ECF No. 62). Ms. Brill has also withdrawn all previously pending motions on behalf of Defendant (ECF Nos. 41, 42, 43, 45, 49), *except* his Letter Request to Seal the Government's Response (ECF No. 48). The matter is now ripe for review.

## DISCUSSION

### I.    Standard of Review

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'" *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Prior to bringing a motion for reduced sentence before the sentencing court, defendants first "must at least ask the Bureau of Prisons (BOP) to do so on their behalf and give BOP thirty days to respond." *Id.* "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary

---

[2] These prior § 3582 motions were based upon the Covid-19 pandemic and were filed before Defendant's federal sentence in Pennsylvania was vacated.

[3] Pursuant to U.S.S.G. § 1B1.10 cmt. n.9, the court was to utilize the Policy Statement in effect at the time it decided Defendant's motion, regardless of when the motion was filed. As such, the amendments that took effect on November 1, 2023 became applicable to Defendant's pending motion, thereby rendering supplemental briefing appropriate.

reasons exist to justify compassionate release." *United States v. Sellers*, No. 10-434, 2020 U.S. Dist. LEXIS 72991, at *2 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also Raia*, 954 F.3d at 595.

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if, after finding extraordinary and compelling reasons warrant a reduction, such a reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and that the applicable sentencing factors under § 3553(a) warrant a reduction. *United States v. Pabon*, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020). As such, "[c]ompassionate release is discretionary, not mandatory; therefore, even if a defendant is eligible for it, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Alexander*, No. 23-1011, 2023 U.S. App. LEXIS 16162, at *3–4 (3d Cir. June 27, 2023). "[T]he defendant 'bears the burden' of proving 'compelling and extraordinary reasons exist to justify compassionate release'. . . 'by a preponderance of the evidence.'" *United States v. Mims*, No. 19-527, 2021 U.S. Dist. LEXIS 169385, at *5 (D.N.J. Sept. 7, 2021) (internal citations omitted).

## II.   **Analysis**

As a threshold matter, the Court finds Defendant has satisfied the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A). (ECF Nos. 56-1 at 48–52 & 61 at 7.)

### A. Amendments

In assessing this motion, the Court recognizes recent changes to the Sentencing Guidelines Policy Statements regarding motions brought pursuant to 18 U.S.C. § 3582(c)(1)(A):

> On April 27, 2023, the Sentencing Commission promulgated proposed amendments to U.S.S.G. § 1B1.13, the guideline policy statement addressing compassionate release motions. The Amendments went into effect on November 1, 2023. The

> Amendments expanded the list of "extraordinary and compelling reasons" by adding—under subsection (b)(6)—an "unusually long sentence" prong, which allows a judge to consider a non-retroactive change in sentencing law as an extraordinary and compelling reason under a narrow set of circumstances. Under subsection (b)(6), such non-retroactive changes in law may be considered an extraordinary and compelling reason warranting a sentence reduction where (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least ten years of the sentence; and (c) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.

*United States v. Shore*, No. 07-66, 2023 U.S. Dist. LEXIS 197911, at *9–10 (E.D. Pa. Nov. 2, 2023); *see also* U.S. Sentencing Commission, "Adopted Amendments," Apr. 27, 2023, available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 ("[T]he amendment extends the applicability of the policy statement to defendant-filed motions; expands the list of specified extraordinary and compelling reasons that can warrant sentence reductions; retains the existing 'other reasons' catchall; provides specific guidance with regard to the permissible consideration of changes in the law; and responds to case law that developed after the enactment of the First Step Act.").

## 1. Unusually Long Sentence

The new Policy Statement for § 1B1.13 incorporates portions of former Commentary and Application Notes to the text of the Policy Statement and provides in relevant part:

> **(6) Unusually Long Sentence.**--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S. SENT'G GUIDELINES MANUAL § lBl.l3(b)(6), p.s. (Nov. 2023).

5

The Government argues the Sentencing Commission has exceeded its authority in promulgating U.S.S.G. § 1B1.13(b)(6) regarding "unusually long" sentences and that "(b)(6)" should be deemed invalid.  (ECF No. 62 at 22–23.)  It further argues "(b)(6)" should be disregarded because it conflicts with 18 U.S.C. § 3582(c)(1)(A), which "excludes intervening developments in sentencing law from constituting 'extraordinary and compelling' reasons for a sentence reduction, whether considered alone or in connection with other factors and circumstances."  (ECF No. 62 at 24) (citing *U.S. v. Andrews*, 12 F.4th 255, 260–261 (3d Cir. 2021)).  However, to the extent the Third Circuit has not yet addressed these specific issues,[4] this Court shall proceed with its analysis

---

[4] The Court notes that the Third Circuit explicitly anticipated the development of additional policy statements regarding what should be considered extraordinary and compelling in the context of prisoner-initiated motions.  *See United States v. Andrews*, 12 F.4th 255, 259 n.4 (3d Cir. 2021).  Nothing in the Third Circuit's holding in *Andrews* suggests that a district court should *not* proceed to apply promulgated policy statements once they became available.  In fact, *Andrews'* language suggests that the Court could be bound by such an update in language now that such a policy statement has been developed and undisturbed by Congress: "Thus, according to its plain language, the existing policy statement is not applicable—and [therefore] not binding—for courts considering prisoner-initiated motions. . . The court correctly recognized that although the policy statement <u>is no longer binding</u>, it still sheds light on the meaning of extraordinary and compelling reasons."  *Id*. at 259-60 (emphasis added).  This is further supported by the observations made in *United States v. Edmond*, which stated that:

> [y]ears prior to Andrews, the Third Circuit analyzed the language of 18 U.S.C. § 3582(c)(1)(A)—specifically the requirement that compassionate release must be consistent with any policy statements issued by the Sentencing Commission—and determined that the Policy Statement contained at USSG § 1B1.13 is binding on federal courts.  It is true that *Andrews* concluded the opposite—that the Sentencing Guidelines § 1B1.13 is not binding.  However, *Andrews* reached that determination based on the unique circumstances presented there, where the Sentencing Commission had for years been unable to muster a quorum to amend the Sentencing Guidelines. As a result, the Sentencing Guidelines did not reflect Congress' 2018 amendment to 18 U.S.C. § 3582(c)(1)(A) that permitted—for the first time—prisoners to initiate motions for compassionate release, rather than just the Government.  This led to a natural conclusion: because the text of the policy statement explicitly limits its application to Bureau-initiated motions . . . according to its plain language, the existing policy statement is not applicable—and not binding—for courts considering prisoner-initiated motions.  *Andrews* therefore eschewed the ordinary rule that the policy statement contained at USSG § 1B1.13 is binding, but only because the Sentencing Guidelines themselves provided that the policy statement did not apply to prisoner-initiated motions. The 2023 Sentencing Guidelines fixed this issue and now explicitly provides that the policy statement applies to a motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A).  When applying the 2023 Sentencing Guidelines, therefore, this Court must revert to the ordinary rule that § 1B1.13 is binding.

*United States v. Edmond*, No. 4:96-203, 2024 WL 1684889 at *7 (M.D. Pa. Apr. 18, 2024) (internal quotations omitted).  As further discussed *infra* in Section C, the Court disagrees with the Government's position that the new

under the new Policy Statement.  *See United States v. Skeeters*, No. 5-530-1, 2024 WL 992171 at *6 (E.D. Pa. March 7, 2024) ("It is a fundamental canon that all statutory provisions, if possible, must be read to give them effect.  Moreover, repeal by implication is not favored.  Section 403(b) of the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), 28 U.S.C. § 994(t), and Section 1B1.13(b)(6) of the Sentencing Guidelines are not in tension with one another and can all work together in harmony.") (internal citations omitted).

Here, Defendant has been incarcerated since March 18, 2009.  (PSR at 1.)  On March 14, 2023, the 120-month sentence imposed pursuant to 18 U.S.C. § 924(c) for use of a firearm during the Pennsylvania robbery was vacated and Defendant was resentenced in the Eastern District of Pennsylvania to a total of 50 months on Count One, charging Attempted Hobbs Act Robbery.  (ECF No. 71 at 2).  Therefore, Defendant appears to have completed serving his federal Pennsylvania sentence on or about May 18, 2013 and has presumably been serving his federal New Jersey sentence since that time.

Defendant contends as of April 2024, he had served "more than 90 percent" of his combined (federal sentences from Pennsylvania and New Jersey) 225-month sentence.  (ECF No. 62 at 1 n.1.)  The Court finds he has served more than 11 years of the term imposed by Judge Irenas and currently has an anticipated release date of July 22, 2025.  (ECF No. 56 at 3.)[5]  Presently, Defendant is housed at the Federal Detention Center in Philadelphia, Pennsylvania as part of a Reentry Plan that commenced 18 months prior to his anticipated release date on the New Jersey federal sentence.  (ECF No. 56-1 at 32; *Find an Inmate*, Federal

---

policy statement conflicts with existing statutes or Third Circuit precedent.  However, the Court acknowledges that this issue is one that has heavily divided courts in every Circuit.

[5] All of these calculations are estimations based upon the record currently before the Court and are subject to the BOP's official calculative determinations.  *See Capozzi v. Ndiaye*, No. 21-19533, 2022 U.S. Dist. LEXIS 231769, at *7 (Dec. 27, 2022) ("Under our jurisprudence, the 'authority to calculate a federal sentence and provide credit for time served . . . [belongs] to the Attorney General, who acts through the BOP.'") (citing *Goodman v. Grondolsky*, 427 F. App'x. 81, 82 (3d Cir. 2011)).

Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 18, 2024)).  However, the record indicates there is a Pennsylvania State parole detainer on Defendant, which is expected to be served upon completion of his federal sentences.  (ECF No. 58 at 16.)  As such, there is a considerable possibility Defendant will be serving an *additional* term of incarceration at the State level once he has completed his federal sentence.

Further, a change in the law occurred which would drastically affect Defendant's New Jersey sentence by reason of his federal Pennsylvania sentence being vacated in part and reduced in part.  This change in law reversed the existence of a "prior (second / successive) conviction" under 18 U.S.C. § 924(c), thereby eliminating the 25-year consecutive mandatory minimum in this case.[6]  But for the now vacated prior conviction in his federal Pennsylvania matter serving as a basis for a mandatory 25-year consecutive term at the time Judge Irenas sentenced Defendant in this District, his current sentence is grossly disparate to what he would receive were he to be sentenced here today.[7]

The Court is aware the Government agreed to submit a Motion for Downward Departure ███████████████████████████████  The Court is also aware that after committing the instant offenses but before sentencing, Defendant went out and committed other similarly serious offenses in Pennsylvania.  Still, the Government honored their agreement ████████████████████████████████████████████ ████████████████████████  Nevertheless, the sentence of 225 months that was ultimately imposed for the instant offenses (100 months on Count 1 of the Information (50 months of

---

[6] "Under the previous version of 18 U.S.C. § 924(c), a first § 924(c) conviction carried with it a mandatory minimum sentence of seven years, and any subsequent § 924(c) conviction in the same indictment carried a mandatory minimum sentence of twenty-five years, each to be served consecutively."  *United States v. Ali*, No. 7-42-2, 2024 WL 3161749 at *1 n.1 (E.D Pa. Jun. 25, 2024).

[7] Defendant argues "[h]ad he been sentenced without a prior § 924(c) conviction from the E.D. Pa., he would have been released from prison last year."  (ECF No. 56 at 19.)

which were to be served consecutively to Defendant's Pennsylvania sentence) and 125 months

on Count 2 of the Information, to be served consecutively to the term imposed on Count 1 of

the Information and consecutively to the term imposed in the Eastern District of

Pennsylvania),[8] was not inconsequential. (ECF Nos. 17 at 2 & 23 at 2.)

Next, the court has considered Defendant's individualized circumstances and finds

they advance his claim for relief on the basis of an "unusually long sentence."[9]  First, no one

disputes the fact that the crimes committed were very serious; a security guard was held at

gunpoint, bound, and robbed.  (PSR ¶ 15.)  There is also no dispute that Defendant has a

lengthy criminal history in both State and Federal courts involving multiple theft, robbery,

drug, burglary and assault offenses, beginning at age nineteen through age 45, when he

committed the instant offenses. (PSR ¶¶ 59–96a.)  However, the time Defendant has served

on these most recent offenses has been the single longest amount of time he has ever spent

incarcerated.   Although Defendant was well into adulthood when he committed these

offenses, he is now in his sixties.  The Court believes his rehabilitative efforts while

---

[8] As the Court estimates, this would equate to more than 14½ years beyond the time Defendant was given for his separate offenses in the Eastern District of Pennsylvania.

[9] "Individualized circumstances" are set forth in 18 USCS § 3553, which provides in relevant part as follows:

(a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

* * * *

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a)(1), (a)(2), (a)(6).

incarcerated, coupled with his age and length of time in prison (15 years),[10] have served as just punishment, have afforded adequate deterrence, and have worked to promote respect for the law by Defendant.  *See United States v. Whitted*, No. 4-0176, 2021 U.S. Dist. LEXIS 15706, at *20 (D.V.I. Jan. 28, 2021) ("Courts have viewed evidence of a defendant's rehabilitation as support for such deterrence and protection of the public from future harm.").

Moreover, because Defendant's current release date on the New Jersey federal charges is July 22, 2025, the granting of this motion does not undermine Judge Irenas' originally imposed sentence which clearly reflected the seriousness of the offenses.  This is so for two reasons: (1) the law has since changed; and (2) Defendant will still face potentially more time for his State parole violation in Pennsylvania. Because of the progress Defendant has made while in prison, the Court does not believe he poses a risk to the community at this time.  In particular, Defendant has obtained his G.E.D., maintained employment, learned a trade, "continues to make quarterly [inmate Financial Responsibility Program] payments[,]" and has the continued "emotional and financial support" of his family upon release.  (ECF Nos. 56 at 6, 25 & 56-1 at 29–47.)  The Court finds Defendant has taken advantage of the educational and vocational opportunities afforded him while in prison and has seemingly realized there does exist a life for him other than one of crime.

Next, although not sufficient in and of itself for release under § 3582, Defendant does suffer from two chronic illnesses—osteoarthritis and Type II diabetes—and only has one functioning kidney.  (ECF No. 56 at 5.)  Under § 3553(a)(2)(D), this must factor into the Court's analysis, particularly in light of Defendant's age and potential to serve an additional sentence on the State parole violation.

---

[10] Defendant has been detained since March 18, 2009, on the Pennsylvania federal charges, to which the New Jersey federal sentence runs concurrently in part and consecutively in part.  (PSR at 1; ECF Nos. 17 & 23 at 2.)

Last, § 3553(a)(6) provides for the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. At the time of sentencing, Defendant argued a sentencing disparity existed between himself and each co-defendant: Co-defendant Jackson because he—not Defendant—possessed and brandished the firearm at the time of the robbery, and Co-defendant Dennison because he had a more extensive criminal history than Defendant. (ECF No. 58 at 10–14.) However, because neither of the two co-defendants engaged additional criminal conduct after committing the offenses involved herein, it is unnecessary to compare the sentences they received with that of Defendant.

In concluding my § 3582 analysis, I must determine whether a reduction would be consistent with applicable Policy Statements issued by the Sentencing Commission. For the reasons articulated above, a reduction would be wholly consistent with applicable Policy Statements—particularly those that became effective in November 2023 regarding an "Unusually Long Sentence" and "Other Reasons" (discussed below). U.S.S.G. § lBl.l3(b)(5), (6).

In view of the foregoing, this Court finds Defendant has met his burden of demonstrating by a preponderance of evidence that extraordinary and compelling reasons exist for compassionate release on the basis of an unusually long sentence. Although this determination renders the remainder of Defendant's issues moot, the Court shall nevertheless address them in turn.

### 2. Age of Defendant

Defendant next argues that under U.S.S.G. § 1B1.13(b)(2), his age constitutes an extraordinary and compelling reason for compassionate release. (ECF No. 56 at 4.) This provision states as follows:

> (b) Extraordinary and compelling reasons. Extraordinary and compelling reasons exist under any of the following

11

circumstances or a combination thereof:

\* \* \* \*

(2) Age of the defendant. The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; *and* (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b)(2) (emphasis added).

Inasmuch as Defendant turned 60 years old in March 2024 (ECF No. 56 at 5) and the remaining requirements of U.S.S.G. § 1B1.13(b)(2) are not mutually exclusive, said provision is inapplicable to his situation.[11]

### 3.  "Other Reasons"

Pursuant to the recently enacted Policy Statement to U.S.S.G. § 1B1.13, a court may consider "any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5).  Paragraphs (1) through (4) provide for: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; and, (4) instances in which the defendant was a victim of abuse while in custody.  U.S.S.G. § 1B1.13(b)(1)–(4).  Defendant herein invokes the "Other Reasons" provision in support of release, again claiming his age, deterioration in health, and rehabilitation all combine to warrant relief.  The Court finds as follows:

### a.  Medical Circumstances

As discussed above, Defendant suffers from osteoarthritis, Type II diabetes, and has one

---

[11] Defendant addresses the requirements of U.S.S.G. § 1B1.13(b)(2) as if they involve an "either/or" situation.  Such is not the case.  Therefore, the discussion he provides pertaining to his "serious deterioration in his health from aging" (ECF No. 56 at 5) is of no consequence to this Court's ruling regarding this particular provision, as Defendant has failed to establish the age requirement of Subsection (b)(2)(A).

functioning kidney.  (ECF No. 56 at 5.)  He indicates he "has been cleared to wear a back brace" to alleviate the osteoarthritis symptoms in his back.  (ECF No. 56 at 5.)  He further indicates he takes medication to control his diabetes and that his A1C is generally around 7%.  (ECF No. 56 at 5.)

Although these conditions do not necessarily constitute "a serious deterioration in his health from aging" and render his health situation "precarious" as Defendant so contends, they do exist and must be considered in conjunction with the other circumstances presented.  (ECF No. 56 at 5.)[12]  Upon doing so, the Court finds Defendant has not shown he has any medical condition that cannot be effectively managed by the BOP.[13]  *See United States v. Williams*, No. 11-00421, 2022 U.S. Dist. LEXIS 57409, at *5-6 (D.N.J. March 29, 2022) (denying a defendant's request for compassionate release on the basis of medical condition because the defendant was being routinely seen by medical staff and "the [] medication that the facility provide[d] effectively manage[d] any symptoms.").  As such, Defendant's current medical issues do not tip the scale in favor of release but are included in the Court's considerations as a whole given the totality of the circumstances.

### b.  Age

As discussed above, Defendant has not satisfied the age requirement of U.S.S.G. § 1B1.13(b)(2), as he turned 60 years of age in March 2024.  (ECF No. 56 at 5.)[14]  However, when coupled with the length of time served on his federal New Jersey sentence and the other factors

---

[12] "In 2019, about 528 million people worldwide were living with osteoarthritis; an increase of 113% since 1990. About 73% of people living with osteoarthritis are older than 55 years" *Osteoarthritis*, WORLD HEALTH ORGANIZATION (July 14, 2023), https://www.who.int/news-room/fact-sheets/detail/osteoarthritis (last visited June 4, 2024).

[13] Defendant claims there was a delay in blood testing and receipt of medication for his diabetes while at FCI Otisville. (ECF No. 56 at 5.)  However, he does not assert that this condition has not been under control or that he suffered any adverse effect from the noted delay.

[14] The Government notes that Defendant's age is currently 61. (ECF No. 61 at 43.)  However, the PSR lists his birthdate as March 29, 1964. (PSR at 2.)  Whether Defendant is 60 or 61 is inconsequential for purposes of U.S.S.G. § 1B1.13(b)(5).

considered herein, Defendant's age tips the scale more towards release than not.

### c.  Family Circumstances

"Family circumstances" as contemplated by U.S.S.G. § 1B1.13(b)(3) are as follows:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

*Id*.

Defendant does not present "family circumstances" in the context of § 1B1.13(b)(3).

### d.  Victim of Abuse

Defendant does not suggest he was a victim of abuse while in custody pursuant to U.S.S.G. § 1B1.13(b)(4).

### e.  Sum of Circumstances

As discussed above, the Policy Statement to U.S.S.G. § 1B1.13 permits a court to consider "***any other circumstances or combination of circumstances*** that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) are similar in gravity to those described in paragraphs (1) through (4)."  U.S.S.G. § 1B1.13(b)(5) (emphasis added).

Here, in addition to his age and medical status, Defendant cites his achievements in prison as support for release. (ECF Nos. 56 at 6 & 62 at 13–15.)

The amended Policy Statement to U.S.S.G. § lBl.l3 currently addresses the issue of rehabilitation as follows:

> Rehabilitation of the Defendant.--Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. ***However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted***.

U.S.S.G. § 1B1.13(d) (emphasis added).

For the reasons set forth above in the Court's discussion of the § 3553 factors under its "Unusually Long Sentence" analysis, Defendant's rehabilitation efforts and successes weigh in favor of release when combined with the "other circumstances" of length of sentence and age. Accordingly, release is warranted in accordance with U.S.S.G. § 1B1.13(b)(5).

### B.  Motion to Seal

With respect to Defendant's previously filed Moton to Seal, "[i]t is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records." *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 192 (3d Cir. 2001) (citing *Littlejohn v. BIC Corporation*, 851 F.2d 673, 677–78 (3d Cir. 1988)).  Ordinarily, documents filed with the court or utilized in connection with judicial proceedings are part of the public record with a presumptive right of public access.  *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 164 (3d Cir. 1993).  However, in some instances, "'the strong common law presumption of access must be balanced against the factors militating against access.'"  *Id*. at 165 (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)).

When a party files a motion to seal, they must demonstrate that good cause exists for protection of the material at issue.  *Securimetrics, Inc. v. Iridian Techs., Inc*., No. 3-04394, 2006 U.S. Dist. LEXIS 22297, at *7 (D.N.J. Mar. 30, 2006).  A party demonstrates good cause by making a "particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.'" *Id*. (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).  "Good cause is not established where a party merely provides 'broad allegations of harm, unsubstantiated by specific examples or articulated reasoning[.]'" *Id*. (quoting *Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1121 (3d Cir. 1986)).

In this case, Defendant has made the requisite particularized showing for the reasons set forth on the record at the hearing held on July 24, 2024.  (ECF No. 65.)  Given the nature of the proceedings, the Court will not restate those findings here, and notes that Defendant's Motion to Seal is granted for good cause.

### C.   Motion to Stay

The Court notes that district courts possess inherent discretion to stay a proceeding whenever the interests of justice mandate such action, and as such a court may issue a stay if it simplifies the issues and promotes judicial economy, provided that the balance of harm to the parties is taken into consideration.  *See Gentian v. Tristar Prods.*, No. 13-1758, 2021 WL 3561215 at *8 (D.N.J. Aug. 12, 2021).  Put another way, "a district court's inherent authority 'to control the disposition of the causes on its docket with economy of time and effort' implicitly carries with it 'the power to stay proceedings[.]'" *Akishev v. Kapustin*, 23 F.Supp.3d 440, 445 (D.N.J. 2014). However, the Court must be careful to weigh competing interests because the stay of a civil proceeding is an "extraordinary remedy."  *Id*. (internal citations and quotations omitted).  Several considerations must be taken into account: whether a stay would simplify the issues and trial of

the case, and in circumstances where a party is seeking to wait until the resolution of a purportedly related litigation, whether the resolution of the related litigation would substantially impact or otherwise render moot the present action, whether discovery is complete, whether a trial date has been set, whether denial of the stay would create a clear case of hardship or inequity for the moving party, and whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Id.* at 446. Additionally, the length of the stay should also be considered. *Owlpoint, LLC v. Spencer Thomas Grp.*, No. 20-4495, 2021 WL 321479 at *2 (D.N.J. Jan. 29, 2021). The Court notes that such a decision is based on its exercise of judicial discretion, and not a matter of right. *Kapustin*, 23 F.Supp.3d at 449.

Here, the Government has requested this Court to stay its decision regarding Defendant's motion for compassionate release until the disposition of pending appeals concerning other cases in this Circuit that implicates the potential "validity" of U.S.S.G. § 1B1.13(b)(6), and that waiting for the Third Circuit's guidance would be permissible to "promote judicial economy."[15] The Court will address each factor weighing the various considerations presented by the Government's request for a stay in turn.[16]

---

[15] The Court notes that Congress has not taken action to amend or address § 1B1.13(b)(6); nor has Congress limited the Sentencing Commission in its ability or scope to consider other factors, including nonretroactive changes in the law, not while amending the First Step Act, nor when it amended § 924(c). As stated in *Concepcion v. United States*, "[t]he only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution . . . [and] Congress is not shy about placing such limits where it deems them appropriate." *Concepcion v. United States*, 597 U.S. 481, 494 (2022), and the Court agrees with other courts in this Circuit that "[t]he fact that Congress chose not to limit a court's ability to consider nonretroactive changes in the law in a motion under § 3582(c)(1)(A) is telling." *United States v. Ali*, No. 7-42-2, 2024 WL 3161749 at *9 (E.D. Pa. Jun. 25, 2024); *see also United States v. Skeeters*, No. 5-530-1, 2024 WL 992171 at *6 (E.D. Pa. Mar. 7, 2024). Notably, in the Fourth Circuit, courts have recognized that the 2023 Amendments from the Sentencing Commission has provided limitations: "[n]ow, changes in the intervening law 'shall not be considered [standalone] for purposes of determining whether an extraordinary and compelling reason exists. U.S.S.G. § 1B1.13(c). The lone exception arises where a court determines that a defendant received an unusually long sentence. U.S.S.G. § 1B1.13(b)(6)." *United States v. Johnson*, No. 18-178, 2024 WL 2956095 at *4 (D. Md., Jun. 12, 2024); *see also United States v. Taylor*, No. 12-570, 2023 WL 8650367 at *5 (D. Md. Dec. 14, 2023) (holding same); *United States v. Ringgold*, No. 17-232, 2023 WL 7410895 at *6 (D. Md., Nov. 8, 2023) (holding same).

[16] The Court notes that two factors—whether discovery has been completed and whether a trial date has been set— are not relevant to the analysis given the posture of this case and thus will not be addressed further.

17

First, the Court will address whether a stay would simplify the issues currently before the Court. For the reasons discussed below, the Court does not believe that there is an issue of invalidity or conflict with U.S.S.G. § 1B1.13(b)(6), the amendment to § 924(c), and the Third Circuit's holding in *Andrews*. Thus, a stay would not simplify the issues that are ripe and before the Court today.

The Court begins with the acknowledgement that the First Step Act became effective on December 18, 2018, which altered the sentencing requirements of § 924(c) and modified 18 U.S.C. § 3582(c)(1)(A). *Skeeters*, 2024 WL 992171 at *2. Pertinent to our case here, the First Step Act (Pub. L. No. 115-391, 132 Stat. 5194 (codified as amended in scattered sections of U.S.C.) changed the length of the mandatory minimum sentences applicable on successive counts of § 924(c) such that after the 7 year mandatory minimum sentence for the first violation, each subsequent count would carry a mandatory minimum of 7 years, rather than 25 years each running consecutively. 18 U.S.C. § 924(c)(1)(A)(ii). *Id.* Further, this change was to be applied to cases where the sentence had not yet been imposed, making this change non-retroactive. § 403(b), 132 Stat. at 5221. Through the First Step Act, Congress also amended 18 U.S.C. § 3582(c)(1)(A), eliminating the requirement that any motion for a reduction in sentence had to be made by the Director of the Bureau of Prisons. *Id.* Now defendants may file their claims directly after their administrative rights are exhausted.

When addressing a motion to reduce a sentence, also known as compassionate release, the Court must analyze the following laws as set by Congress: first, § 3582(c)(1)(A) requires a court to consider its § 3553(a) factors before granting compassionate release; second, § 3553(a)(5) requires a court to consider a pertinent policy statement the Sentencing Commission issues when reviewing the § 3553(a) factors; third, the Sentencing Commission through § 994(a)(2)(C) may

issue general policy statements concerning sentence modifications under § 3582(c); and, fourth, § 994(t) authorizes the Sentencing Commission to issue policy statements defining extraordinary and compelling reasons warranting compassionate release. *United States v. Moore*, No. 14-209-2, 2024 WL 1286935 at *4-5 (E.D. Pa. Mar. 26, 2024). The problem presented in *Andrews* was that the court had to review these laws without the benefit of the Sentencing Commission providing up-to-date policy statements from the First Step Act's modification in 2018 because the Sentencing Commission did not have the quorum necessary to promulgate new policy statements. *Skeeters*, 2024 WL 992171 at *3, *5. Thus, the Third Circuit in *Andrews* did not have the typical ability to rely on the language of 18 U.S.C. § 3582(c)(1)(A).[17] Because the Third Circuit was operating outside of the usual confines of 18 U.S.C. § 3582(c)(1)(A)—specifically the requirement that compassionate release must be consistent with any policy statements issued by the Sentencing Commission—it did not need to address 28 U.S.C. § 994(t), which Congress explicitly delegated authority to the Sentencing Commission to determine what would constitute "extraordinary and compelling reasons" for a reduction of sentence. *See* 28 U.S.C. § 994(t); *Skeeters*, 2024 WL 992171 at *5. The Sentencing Commission has broad discretion to develop policy statements, and Congress' delegation of authority to the Commission has been supported by the Supreme Court. *See Mistretta v. United States*, 488 U.S. 361, 371-79 (1989). The only limitation on the

---

[17] As noted *supra* at n.4, prior to *Andrews*, the Third Circuit analyzed the language of 18 U.S.C. § 3582(c)(1)(A)—specifically the requirement that compassionate release must be consistent with any policy statements issued by the Sentencing Commission—and determined that the Policy Statement contained at USSG § 1B1.13 was binding on federal courts. *See Edmond*, 2024 WL 1684889 at *7. Given the particular circumstances in *Andrews*, the Third Circuit concluded that the Sentencing Guidelines § 1B1.13 were not binding in its attempt to construe the defendant's petition, brought individually and not through the Bureau of Prisons, where the Sentencing Commission had for years been unable to muster a quorum to amend the Sentencing Guidelines despite several pertinent changes to the law as applied in that case. *Andrews*, 12 F.4th at 259 & 259 n.4. "This led to a natural conclusion: because the text of the policy statement explicitly limits its application to Bureau-initiated motions . . . according to its plain language, the existing policy statement is not applicable—and not binding—for courts considering prisoner-initiated motions. *Andrews* therefore eschewed the ordinary rule that the policy statement contained at USSG § 1B1.13 is binding, but only because the Sentencing Guidelines themselves provided that the policy statement did not apply to prisoner-initiated motions." *See Edmond*, 2024 WL 1684889 at *7 (internal quotations omitted).

Commission is that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *See* 28 U.S.C. § 994(t). Thus, when the Sentencing Commission was able to resume its duties in 2023, the constraints presented in *Andrews* are no longer present for the case at bar: several amendments to the Sentencing Guidelines have taken effect without any modification or disapproval by Congress which specifically provides additional "extraordinary and compelling reasons" to be considered by a court in review of a petition pursuant to § 3582(c)(1)(A)(i). *Skeeters*, 2024 WL 992171 at *3. In particular, the Sentencing Commission amended § 1B1.13(b), providing in pertinent part:

> Unusually Long Sentence. — If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S. Sent'g Guidelines Manual § lBl.l3(b)(6), p.s. (Nov. 2023). This is precisely the kind of policy statement the Third Circuit in *Andrews* held that the Court needed but could not "update" on its own to address the fact that the Commission had not yet promulgated a post-First Step Act policy statement "describing what should be extraordinary and compelling in the context of prisoner-initiated motions." *Andrews*, 12 F.4th at 259 n.4. The Sentencing Commission has now done so, and thus this Court must follow its guidance, as *Andrews* stated would come to pass. *Id.* (describing the lack of appropriate guidance from the Sentencing Commission a "temporary anomaly.").

Further, Congress' decision to not make the amendments to § 924(c) retroactive does not conflict with the holding in *Andrews*, nor does it run afoul of the Sentencing Commission's

decision to address unusually long sentences.  In *Andrews*, the Third Circuit explicitly noted that a statutorily required sentence or Congress' nonretroactive sentencing reductions cannot be extraordinary or compelling reasons for the purposes § 3582(c)(1)(A), this did not mean that an unusually long sentence (due to change in the "current sentencing landscape") could not impact a compassionate release analysis: in fact, *Andrews* explicitly held that "the current sentencing landscape may be a legitimate consideration for courts at the next step of the analysis when they weigh the § 3553(a) factors."  *Id.* at 262. This is precisely the step in the analysis where the Sentencing Commission's new policy statement regarding unusually long sentences applies.  *See Moore*, 2024 WL 1286935 at *4-5.  In addition, when viewing all of the legislative changes of the First Step Act and § 924(c) as a whole, it appears to this Court that Congress intended to prevent generalized, across-the-board reductions for any and all defendants who had been sentenced prior to the amendment of § 924(c).[18]  This is entirely congruent with Congress' policy objectives of individualized and narrow relief:

> [O]ne of the expressed purposes of section 3582(c)(1)(A) when it was in enacted in 1984 was to provide a "narrow avenue for judicial relief from unusually long sentences."  S. Rep. No. 98-225 (1983). Consistent with that statement, section 1B1.13(b)(6) does not categorically permit any defendant sentenced under the prior version of § 924(c) to obtain compassionate release.  Indeed, section 1B1.13(c) forbids such a categorical grant of compassionate release . . . Rather, section 1B1.13(b)(6), as explained by the Commission, "permits non-retroactive changes in law . . . to be considered extraordinary and compelling reasons warranting a sentence reduction, but only in narrowly circumscribed circumstances." https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf at p. 10.  It requires a "case-specific, context-based determination and allows for relief only in cases where a defendant has served (i) at least 10 years (ii) of an unusually long sentence, and (iii) a change

---

[18] The Court notes that while Congress did explicitly preclude the retroactivity of the amendment of § 924(c), it did not address or amend § 3582(c)(1)(A)(i) or 28 U.S.C. § 994(t) in light of this change.  This also weighs in favor of the Court's interpretation that the amendment of § 924(c) was intended to prevent generalized relief, whereas § 3582(c)(1)(A)(i) and 28 U.S.C. § 994(t) focus on individualized relief.  *See Skeeters*, 2024 WL 992171 at *6.

> in law has produced a 'gross disparity' between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *United States v. Henderson*, 08-cr-187, 2024 U.S. Dist. LEXIS 38317, 2024 WL 881253 (E.D. Mo. Feb. 23, 2024). Even if a defendant meets these three criteria, section 1B1.13(b)(6) requires a "full consideration of the defendant's individualized circumstances" in order to determine whether such circumstances are "extraordinary and compelling." U.S.S.G. § 1B1.13(b)(6).

*United States v. Ali*, No. 7-42-2, 2024 WL 3161749 at *6 (E.D. Pa. Jun. 25, 2024).

Moreover, the Sentencing Commission promulgated its new policy statement regarding unusually long sentences with the benefit of *Andrews* and the circuit split in the prevailing case law and explained that its revised policy statement was "based on one of the original expressed purposes of § 3582(c)(1)(A), when it was enacted in 1984: to provide a narrow avenue for judicial relief from unusually long sentences," and chose to promulgate a rule that permits a district court to consider non-retroactive changes in the law  in a narrowly tailored approach that complies with the analysis required for compassionate release pursuant to its authority under § 994(t).  *Id*. (internal quotations omitted).  The Third Circuit has recognized that the term "extraordinary and compelling" is ambiguous and requires definition through dictionary definition and the policy statements from the Sentencing Commission pursuant to § 994(t).  *See Andrews*, 12 F.4th at 260; *see also* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, ***shall*** describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.") (emphasis added).

Thus, this Court finds that § 1B1.13(b)(6) comports with the structure, letter, and intent of the various laws governing compassionate release.  This interpretation follows the "fundamental canon that all statutory provisions, if possible, must be read to give them effect," and faithfully follows the spirit and purpose of the First Step Act, § 3582(c)(1)(A), and the Sentencing

Commission's policy statements. *Skeeters*, 2024 WL 992171 at *6. Therefore, this first factor weighs against granting a stay.

Second, the Court seeks to determine whether the resolution of the related litigation would substantially impact or otherwise render moot the present action. Here, the Court finds that the case at bar is sufficiently distinguishable from the "stacking" cases that the Government asserts are analogous to Defendant's case that are currently on appeal before the Third Circuit, and therefore resolution of these cases would not necessarily substantially impact or moot the present action. *United States v. Rutherford*, No. 5-126, 2023 WL 3136125 (E.D. Pa. Apr. 27, 2023) and *United States v. Carter*, No. 7-374, 2024 WL 136777 (E.D. Pa. Jan. 12, 2024) relate to the issue of "stacking" § 924(c) charges, however Defendant here had his original predicate § 924(c) conviction vacated pursuant to *U.S. v. Taylor*, 142 S. Ct. 2015 (2022). The Court notes that in *United States v. Hodge*, 948 F.3d 160 (3d Cir. 2020) and *United States v. Aviles*, 938 F.3d 503 (3d Cir. 2019), explicitly left open the question of whether the First Step Act applied to a defendant whose sentence on § 924(c) counts is vacated and remanded for resentencing after the Act's enactment. *See United States v. Howell*, No. 17-260-2, 2022 WL 484895 at *4 (W.D. Pa. Feb. 15, 2022). The Court notes that the analysis provided in *Howell*, with its extensive review of various Circuit courts and the Third Circuit's limited ability to analyze cases presenting with this issue, is persuasive. In particular, the Court notes that the First Step Act "mandate[d] increased punishment **only** in the case of a 'violation of this subsection that occurs after a prior conviction under this subsection has ***become final***,'" and further made this amendment applicable "if a sentence for the offense has not been imposed as of such date of enactment." *Id*. at *2-3 (emphasis added). What is important here is the impact of vacatur has on the finality of the conviction and its timing in relation to the First Step Act. As articulated in *United States v. Bethea*, 841 Fed. App'x 544, 549-

50 (4th Cir. 2021) and *United States v. Uriarte*, 975 F.3d 596 (7th Cir. 2020) (*en banc*) (cited to by the Third Circuit in *Aviles*, 938 F.3d at 515 n.8), vacatur renders a prior sentence "a legal nullity" which "dictates a finding that Defendant did not have a ***valid*** sentence at the time of the First Step Act's enactment." *Id*. at *5-6. Vacatur creates a "clean slate," which would render "[p]re-Act offenders whose sentences have been vacated [as] similarly situated to individuals who have never been sentenced." *Id*. at *7, (quoting *Uriarte*, 975 F.3d at 603); *see also Pepper v. United States*, 562 U.S. 476, 508 (2011). Thus, a § 924(c) sentence that has been vacated cannot be a valid, final sentence pursuant to § 403(b) and therefore the benefits of the Act are applicable to a resentencing that occurs post the enactment of the First Step Act. *Id*. at *7.

Here, Defendant's predicate § 924(c) conviction was vacated in 2022 pursuant to *U.S. v. Taylor*, 142 S. Ct. 2015 (2022). The enactment of the Act occurred in 2018, and Defendant's resentencing occurred on March 14, 2023, which reduced his Pennsylvania sentence to 50 months, meaning Defendant ostensibly completed his time served for the Pennsylvania offense on or about May 18, 2013. (ECF No. 71 at 2.) Had Defendant been sentenced correctly in the first instance, *i.e.* without the Pennsylvania § 924(c) conviction, he argues he would have been released from prison at least one year ago. (ECF No. 56 at 19.) Given that Defendant's predicate sentence was vacated after the implementation of the Act, this Court has the opportunity to provide relief pursuant to the First Step Act, as Congress intended. These circumstances further weigh against granting a stay.

When considering factors one and two together, the Court notes that if the Third Circuit concluded that U.S.S.G. § 1B1.13(b)(6) was valid, and "effectively overrul[es] *Andrews*," the Court's Opinion today would still stand on all fours: *Andrews* relates to a segment in time where the Sentencing Commission had not yet promulgated its new policy statements, which has now

been rectified and such policy statements have been interpreted by this Court in this Opinion in line with precedent.  Such a result would not require more consideration in determining whether Defendant is eligible for a reduction of his New Jersey sentence given this Court's analysis.  On the other hand, if the Third Circuit concludes that the Sentencing Commission overstepped its authority and that U.S.S.G. § 1B1.13(b)(6) is not valid, this does not impact the fact that Defendant's case presents an open question regarding the impact of vacatur on sentences that implicate the First Step Act.[19]  The impact of Defendant's vacatur distinguishes the case at bar significantly from *Rutherford* and *Carter*, and thus the Court does not believe the possible outcomes of those cases would be substantial enough to justify further delay in this action either.  Here, Defendant had his original predicate § 924(c) conviction vacated after the First Step Act was enacted, and therefore his situation is fundamentally different from the position of the cases and the relief requested in *Rutherford* and *Carter*.  However, even if another court were to come to a different conclusion regarding the level of daylight between the case at bar and *Rutherford* and *Carter*, and their appeal's ultimate impact, the final two factors also weigh heavily against the granting of a stay.

Third, the Court must address the final two factors: whether denial of the stay would create a clear case of hardship or inequity for the moving party, and whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.  The Court notes that the Government does not assert that any hardship or inequity will befall it if the Court were to proceed with its decision, but it does note that the Government believes that a stay would "promote

---

[19] This Opinion's analysis is also supported by U.S.S.G. § 1Bl.l3(b)(5), which permits a court to consider "any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) are similar in gravity to those described in paragraphs (1) through (4)."  U.S.S.G. § 1B1.13(b)(5).  While the Court believes that the relief sought is warranted given the circumstances, without the support of U.S.S.G. § 1B1.13(b)(6), the outcome would be a closer call.

judicial economy."  In contrast, the non-moving party would be unduly prejudiced and a stay would present significant hardship to Defendant, as it would delay his release for the duration of an indeterminate amount of time pursuant to the stay.  Defendant has served over 90 percent of his sentence and is ostensibly set for release in July of 2025.  Staying the matter would only serve to eliminate any of the benefits that the Sentencing Commission intended for prisoners such as Defendant, further delay his ability to serve his State detainer, and deprive Defendant of his ability to return to his family and community.  Given the discussion above, the Court does not believe that holding this case in abeyance serves to promote judicial economy—if anything, refraining from deciding this matter at this juncture would frustrate the ends of justice and effectively deny Defendant's liberty.  After serving more than 11 years for his crimes and considering all of the attendant circumstances of this case, this Court cannot permit whatever pittance it could receive of judicial economy to stand in the way of Defendant's release.  Here, the balance of harms between the parties heavily weighs in favor of granting Defendant's motion without delay.

Therefore, given the weight of each factor, the Court concludes that the issuance of a stay would be unwarranted.  The Government's Motion for Stay must be denied.

## **CONCLUSION**

For the reasons set forth above, the Court will grant Defendant's Motion for Compassionate Release (ECF No. 56), grant Defendant's Motion to Seal (ECF No. 48), and deny the Government's Motion to Stay (ECF No. 61).

An appropriate Order will accompany this Opinion.

Dated: August 23, 2024                                  /s/  Karen M. Williams
Camden, New Jersey                                          Karen M. Williams, U.S.D.J.